UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SHIMEKA GRAHAM, | Case No.: 2:13-CV-01815-KJD-VCF |
| Plaintiff, | |
| v. | ORDER |
| CITY OF NORTH LAS VEGAS, ET. AL., | |
| Defendants. | |

Presently before the Court is Defendant City of Las Vegas' Motion for Summary Judgment (#37) and Defendant City of North Las Vegas' Motion for Summary Judgment (#35). Plaintiff responded in opposition to both motions (#42 and #41) to which Defendants replied (#47 and #48). Additionally, before the Court, is Plaintiff's Motion for Partial Summary Judgment as to the City of Las Vegas (#36). Defendant City of Las Vegas filed a response in opposition (#40) to which Plaintiff replied (#46).

**Background**

On July 24, 2012, Plaintiff's son, Tyrique Graham ("Tyrique"), called her while she was at a friend's house to ask permission for his friend to stay at their residence overnight. Plaintiff responded "no" and Tyrique subsequently hung up on her. Plaintiff alleges that she tried to call

back and Tyrique did not answer.  As a result, Plaintiff left the party soon after the conversation and drove herself home.

Upon arrival, Plaintiff engaged in a verbal dispute with Tyrique as to why he hung up on her.  She then told him to leave the house.  Tyrique approached his bedroom to gather belongings.  Before Tyrique could enter his bedroom, Plaintiff stood in front of Tyrique in the doorway of his bedroom with her arms outstretched, palms facing him.  Tyrique walked into her outstretched hands and Plaintiff pushed him, causing him to step back.  Plaintiff then called the police.

Plaintiff called 9-1-1 and reported that she was having a verbal dispute with her son and that she had been drinking at a friend's house nearby.  She then called four people: her ex-husband and father of Tyrique, Defendant Terry Graham; her boyfriend at the time; the friend from whose house she had just left; and her Watch Commander, Scott Karkos.  City of North Las Vegas officers, Noah Bennett and Toby Winn, responded to the call at 12:36am. Upon the arrival of the officers, Plaintiff gave them her driver's license to confirm her identity and notified them that she was a newly promoted Sergeant with the Clark County Detention Center.  Plaintiff was a corrections officer for fourteen years prior to her promotion.

Plaintiff gave a voluntary statement to the responding officers wherein she admitted the argument with her son, Tyrique, who was sixteen at the time.  Plaintiff admitted that she ordered Tyrique out of the house, stood in the doorway to prevent him from entering his room, and extended her arms and made contact with Tyrique to keep him out of the room.  Plaintiff

told the officers that she called them because she did not want the situation to escalate and wanted Tyrique removed from the residence with the expectation that he would stay at her neighbor's house.

At approximately 1:08am, Sergeant Darrell Semper, the responding officers' superior, arrived on the scene.  He spoke with the responding officers regarding what had transpired.  He then spoke with Plaintiff's Watch Commander and informed him about the situation.

Officer Bennett, one of the first responding officers, took statements of Plaintiff and Tyrique.  Plaintiff's younger son, Torrey and a neighbor friend were also present during the incident.  Torrey provided a statement corroborating the undisputed facts, yet the neighbor friend did not provide a statement.  Both Plaintiff and Tyrique stated that Tyrique became disrespectful of Plaintiff and Plaintiff told him to leave the residence.  Both state that when he attempted to get around Plaintiff to collect his belongings, Plaintiff pushed him.

An officer later spoke with Plaintiff's ex-husband, Terry Graham, a North Las Vegas police officer on the phone.  Mr. Graham was out of town at the time of the incident.  Mr. Graham admits that during his conversation with the responding officer, he inquired about the situation and whether Plaintiff had consumed alcohol.  The responding officer confirmed that Plaintiff had consumed alcohol.

Following this conversation, the responding officers administered a Breathalyzer test on Plaintiff.  Plaintiff failed the test with a blood alcohol level of 0.188.  It is disputed whether or

3

not she consented to the test outright, or if her consent was due to an alleged remark from one of the officers regarding her probation period with her employer.

Plaintiff was arrested for domestic battery and was booked at the City of Las Vegas City Detention Center ("Detention Center") at approximately 3:35am.  Plaintiff was strip searched approximately four hours after she was booked pursuant to Detention Center policy requiring a strip search of all inmates assigned to isolation cells. (#42 Exhibit 6).  Plaintiff remained at the Detention Center for 12 hours and was released 13 hours after being booked.  All charges against Plaintiff were dropped for denial of prosecution.

**Legal Standard**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the

4

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**Analysis**

**1. Strip Search**

Plaintiff brings a cause of action pursuant to 42 U.S.C §1983 regarding the strip search conducted by Detention Center officers.  Local government entities "can be sued directly under §1983…where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [entity's] officers." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 659 (1978).  Municipalities, their agencies, and their supervisory personnel cannot be held liable under section 1983 on a theory of respondeat superior.  Shaw v. State of Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986).  They can, however, be held liable for deprivations of constitutional rights resulting from their policies or customs. Id.

In order to prove municipal liability under section 1983, Plaintiff must show: (1) a violation of Plaintiff's constitutional rights; (2) the Defendants acted under color of law; (3) the action was taken pursuant to a plan, policy, or custom of the entity; and (4) the policy or custom was the actual cause or moving force behind the alleged deprivation. See Monell, 690–70.

City of Las Vegas' policy requires corrections officers within the Administrative Segregation Unit of the Detention Center to: "strip search all inmates assigned to isolation cells before placing them in isolation." (#36 Ex. 6).

It is undisputed that the strip search was conducted "under color of law," pursuant to the policy set forth above, by Detention Center officers in their official capacity. (#36 Ex. 5 at 8).

Whether the strip search was a violation of Plaintiff's constitutional rights is a factor that requires more analysis.

Plaintiff alleges that the strip search resulted in the deprivation of her rights to not be subjected to an unreasonable search pursuant to the Fourth and Fourteenth Amendments. Whether a search is constitutional turns upon the need for the particular search weighed against the invasion of rights the search entails. Bell v. Wolfish, 441 U.S. 520, 558–59 (1979).  Under this balancing test, a court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Id. at 559; Bull v. City and County of San Francisco, 595 F.3d 964, 974–75 (9th Cir. 2010). Where the policy or practice of a prison or jail is at issue, courts must also look to the test articulated in Turner v. Safley, 482 U.S. 78, 89–91 (1987).  Turner directs courts to consider whether any infringement on a prisoner's Fourth Amendment rights is reasonably related to legitimate penological interests.  Bull, at 973. This analysis requires consideration of (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives. Id.

In Edgerly v. City and County of San Francisco, the Ninth Circuit explained Fourth Amendment balancing as it is applied in the strip search context:

> [W]e first held in Giles v. Ackerman that arrestees charged with minor offenses may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband. 746 F.2d 614, 617 (9th Cir. 1984). We have repeatedly applied this rule in cases following Giles. E.g., Act Up!/Portland v. Bagley, 988 F.2d 868, 871–72 (9th Cir. 1993); Fuller v. M.G. Jewelry, 950 F.2d 1437, 1446 (9th Cir. 1991). We

6

recently carved out an exception to this rule in <u>Bull v. City and County of San Francisco</u>, in which we overruled <u>Giles</u> and held that such an arrestee could be strip searched without individualized suspicion if the arrestee would be introduced into the general jail population. 595 F.3d, at 977. In those circumstances, the institutional need to prevent arrestees from bringing contraband into the jail justified the invasion of personal rights that the search entails. <u>Id.</u> (citing <u>Bell</u>, 441 U.S. at 559). <u>Bull</u>, however, left undisturbed our line of precedent requiring reasonable suspicion to strip search arrestees charged with minor offenses who are not housed in the general jail population. 595 F.3d at 972–73.

599 F.3d 946, 957 (2010) (internal quotations omitted).

Plaintiff was not placed in the general jail population.  She was placed in an isolation cell within the Administrative Segregation Unit of the Detention Center due to her position as a Sergeant and Corrections officer. (#36 Ex. 8 at 35).  While substantial deference is owed to jail administrators in matters involving the security of facilities they are charged to maintain, the fact that a strip search is carried out pursuant to policy does not suffice to make the strip search constitutional.  <u>Edgerly</u> at 957.  As a result, City of Las Vegas needed individualized reasonable suspicion in order to strip search Plaintiff.  <u>See id.</u>

Reasonable suspicion exists when the person responsible for the search is aware of specific articulable facts, and inferences from those facts, which reasonably warrant a suspicion that evidence will be uncovered. <u>Kirkpatrick v. City of Los Angeles</u>, 803 F.2d 485, 490 (9th Cir. 1986).  The City of Las Vegas does not offer an evidentiary basis or argument to support a finding of reasonable suspicion to strip search Plaintiff.  Instead, they argue that reasonable suspicion is not required to strip search arrestees brought to correctional facilities for violent crimes.  (#40 at 3).  Thus, according to the City of Las Vegas, "any offense involving violence is not a minor offense," and therefore, a strip search of an inmate arrested for a violent offense will not violate the Fourth Amendment rights of the inmate. (#40 at 3).  Relevant cases,

7

however, establish that the offense of "misdemeanor battery is not sufficiently associated with violence to justify a visual strip search." Holland v. City of San Francisco, 2010 WL 5071597, at *5 (N.D. Cal. Dec. 7, 2010).

The Ninth Circuit has noted that "in some cases, the charge itself may give rise to reasonable suspicion." Way v. County of Ventura, 445 F.3d 1157, 1161 (9th Cir. 2006).  The panel's example of this is found in Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir. 1989).  In that case, the Ninth Circuit upheld the strip search of an inmate in part because the charge against him—grand theft auto—gave rise to reasonable suspicion.  According to the court, the charge was "sufficiently associated with violence to justify a visual strip search." Id. at 1447; overruled on different grounds by Bull, 595 F.3d 964.  Thompson, however, is distinguishable from the instant case, because the plaintiff searched in that case was placed in the general population of the jail. Thompson, 885 F.2d at 1447.

Plaintiff was arrested for misdemeanor domestic battery pursuant to Nevada Revised Statutes ("NRS") § 33.018. [1]   For the purposes of section 33.018, battery is defined as "any willful and unlawful use of force or violence upon the person of another." NRS 200.481.  The Ninth Circuit noted in Ortega–Mendez v. Gonzales, 450 F.3d 1010 (9th Cir. 2006), that the phrase "use of force or violence" is a "term of art, requiring neither a force capable of hurting or causing injury nor violence in the usual sense of the term." Id. at 1016.  Other courts within this circuit support this interpretation of the definition.  See Holland at *3-6 ("In other words, *force

---

[1] The record reflects that Plaintiff has been involved in one other domestic battery incident involving her former spouse, but no evidence indicates that she has a propensity for violence towards her children.

8

against the person … need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark."); See also Hobbs v. State, 251 P.3d 177, 179 (Nev. 2011) ("[T]he language of NRS 200.481 indicates that nonharmful and nonviolent force suffices.").

The court in Kennedy v. Los Angeles Police Dept. narrows Ninth Circuit reasoning that reasonable suspicion is required unless an arrestee will be housed in the general population by holding that the circumstances of the offense determine reasonable suspicion.  901 F.2d 702, 713 (1989); See also Holland at *5.  The plaintiff in Kennedy, like Thompson, was arrested on a charge of grand theft, a felony.  LAPD applied a blanket strip search policy to all inmates arrested on felony charges.  In Kennedy, the court considered the circumstances of the charged offense and characterized it as "an ordinary disagreement between two roommates." 901 F.2d at 716.  Additionally, considering the circumstances of the plaintiff's charged offense, the court in Way v. County of Ventura, noted that the plaintiff "was under the control of the arresting officer from the time she was taken into custody at work until booking. The officer perceived no indication that she was carrying drugs or contraband." 445 F.3d 1157, 1162 (2006).  Thus the plaintiff's strip search in Way ran afoul of the Fourth Amendment.

Here, the circumstances of Plaintiff's charged offense do not give rise to reasonable suspicion.  Plaintiff is a sergeant and former corrections officer.  Her charge resulted from the act of extending her arms and making contact with her teenaged son in the form of a push or shove, causing him to step backward, to prevent him from entering his bedroom during a verbal disagreement.  (#35 Ex. A).  Plaintiff called 9-1-1 as an attempt to deescalate the situation and

1  to safely remove her son from the household.  (#35 Ex. B. at 14).  She also notified her

2  lieutenant and Watch Commander, a requirement whenever a corrections officer has an incident

3  with the police.  Id.  Officers responding to the 9-1-1 call noted that there were no "visible

4  marks or bruises" on Tyrique.  Id.  These facts, combined with the relevant authority suggest

5  that Plaintiff's offense of misdemeanor domestic battery may not be "sufficiently associated

6  with violence to justify a visual strip search."  See Holland at *5.

7        The analyses in Way and Kennedy confirm the rule in Edgerly—if an inmate arrested on

8  a minor offense is not classified for housing in a jail's general population, detention center

9  officials must have individualized reasonable suspicion before conducting a strip search.  See

10 Edgerly at 957.  Here, the offense was a misdemeanor, a minor offense.  Additionally, the City

11 of Las Vegas has not offered any evidence of reasonable suspicion that Plaintiff was carrying or

12 concealing contraband.[2]

13       The Court grants substantial deference to the City of Las Vegas' position that strip

14 searches are performed for the inmates' "protection and the protection of staff," however, the

15 enacted policy authorizing blanket strip searches must also be constitutional. (#40 at 60).  For a

16 policy to be constitutional, it must be "reasonably related" to the penal institution's interest in

_____

[2] The City of Las Vegas alleges that it was concerned for Plaintiff's mental health since she requested to be placed in the general population despite her status as a corrections officer.  An incident report offered in support of this allegation merely states that a mental health evaluation was performed, yet the findings were not offered as evidence of reasonable suspicion that she would harm herself or others.

maintaining security.  Bell at 540.  The court in Kennedy noted that the felony/misdemeanor or

minor/major crime designation is not "reasonably related to the penal institution's objective of

maintaining security," despite the City of Las Vegas' position that any crime involving violence

is a major crime, thus warranting the justification for a strip search.

       Here, the charged offense and corresponding circumstances do not outweigh the fact that

the Detention Center's policy to strip search inmates housed outside of the general population

directly contradicts Ninth Circuit precedent.[3]  The Court finds there are no genuine issues of

material fact as to whether the City of Las Vegas' strip search policy and the subsequent strip

search violated Plaintiff's constitutional rights.  As a result, the Court **GRANTS** Plaintiff

summary judgment on her civil rights claims regarding the strip search and corresponding

policy.  Accordingly, the Court **DENIES** Defendants City of Las Vegas summary judgment on

the same.

### 2. Invasion of Privacy

       Plaintiff asserts a cause of action for invasion of privacy pursuant to Nevada State Law,

alleging that the Detention Center's policy and subsequent search invaded Plaintiff's privacy.

––––––––––––––––––––––

[3] The Court, admittedly, grapples with the apparent conundrum presented here, namely, whether identifying the charged offense and corresponding circumstances of every arrestee booked at the Detention Center who is not placed in the general population is possible.

Nevada has long recognized the existence of the right to privacy.[4] <u>PETA v. Bobby Berosini, Ltd.</u>, 895 P.2d 1269, 1278 (Nev. 1995); <u>holding modified by</u> <u>City of Las Vegas Downtown Redevelopment Agency v. Hecht</u>, 940 P.2d 127 (Nev. 1997).  In order to prove that an invasion of privacy has occurred, a plaintiff must show: (1) there was an actual expectation of seclusion or solitude which was objectively reasonable; (2) the defendant intentionally intruded upon the seclusion of plaintiff; and (3) such an intrusion would be highly offensive to a reasonable person. <u>Id.</u>

        As established above, any strip search of an inmate not housed in the general population of the jail requires reasonable suspicion.  The City of Las Vegas was unable to provide a basis for reasonable suspicion.  As a result, Plaintiff had an objectively reasonable expectation of privacy of her person, upon which Defendants intruded as a result of the Detention Center's strip search policy.  Additionally, the City of Las Vegas purports to seek summary judgment on all of Plaintiff's causes of action, yet its motion fails to address her claim for invasion of privacy.  Further the City of Las Vegas fails to address Plaintiff's invasion of privacy claim in its Response to Plaintiff's Motion for Summary Judgment.  Accordingly, the Court **GRANTS**

---

[4] <u>See</u> <u>Montesano v. Donrey Media Group</u>, 668 P.2d 1081, 1084 (Nev. 1983), cert. denied, 466 U.S. 959 (1984) (adopting the Restatement formulation); <u>M & R Investment Co. v. Mandarino</u>, 748 P.2d 488, 493 (Nev. 1987); <u>Norman v. City of Las Vegas</u>, 177 P.2d 442 (Nev. 1947) (implicitly recognizing an action for invasion of privacy)

Plaintiff's Motion for Partial Summary Judgment regarding her invasion of privacy claim and

**DENIES** Defendants City of Las Vegas summary judgment on this claim.

### 3. Breathalyzer Test and Arrest

The administration of a Breathalyzer test is a search within the meaning of the Fourth Amendment and is therefore subjected to applicable requirements.  See Schmerber v. California, 384 U.S. 757, 767 (1966).  One requirement is that of reasonableness.  Id. at 771. Another requirement is the warrant requirement, which is subject to a few specific and well-delineated exceptions.  Mincey v. Arizona, 437 U.S. 385 (1978).  One such exception is a search incident to a lawful arrest.  Chimel v. California, 395 U.S. 752, 762-63 (1969); Schmerber, 384 U.S. at 770-71.  In Schmerber, the court held that compelling the defendant to provide blood samples for proving his blood alcohol percentage did not violate his constitutional right against unreasonable searches and seizures where there was probable cause to arrest him for driving under the influence of alcohol.  The Schmerber court rejected the claim that the seizure of blood was an unreasonable search and seizure, and identified three requirements deemed critical to the reasonableness of the intrusion in question.  First, there must be a "clear indication" that in fact the desired evidence will be found.  Second, the test chosen to measure defendant's blood alcohol level must be a reasonable one.  Third, the test must be performed in a reasonable manner. 384 U.S. at 770-71.  Furthermore, the Schmerber court rejected defendant's contention that a warrant must be obtained before blood samples can be taken by identifying an exigency.

///

According to the court:

> The officer in the present case ... might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence[.]' We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system ... Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

(citations omitted). Id.

Additionally, according to the court in Burnett v. Municipality of Anchorage, 806 F.2d 1447, 1449-50 (9th Cir. 1986), the taking of breath samples by the police meets the "reasonableness" requirements of Schmerber.   As in Schmerber, the Alaska law enforcement officials in Burnett had probable cause to believe petitioners were under the influence of alcohol; therefore, there existed a clear indication that a breath test would show petitioners had consumed significant quantities of alcohol.  Likewise, the court reasoned that the method of blood alcohol testing used is a reasonable one.  In addition, the breath test sought by the Alaska law enforcement officials was "clearly a less objectionable intrusion than the compulsory blood samples allowed under Schmerber." Id at 1449.  Accordingly, the court concluded that the Breathalyzer test in question was "an appropriate and reasonable search incident to arrest which appellants have no constitutional right to refuse." Id.

The courts in Schmerber and Burnett articulate that a Breathalyzer search is constitutional when it is conducted pursuant to a lawful arrest.  These cases are distinct from the present case, however, because the offenses charged included an element of intoxication, i.e., driving under the influence.  Here, Plaintiff was arrested on a charge of domestic battery.  Intoxication is not an element of battery.  However, an arresting officer's "subjective reason for

14

making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).  In other words, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id.

Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984).  The Court's task in determining whether probable cause to arrest exists as a matter of law in a section 1983 action is slightly different from a similar determination in the context of a direct review of a criminal arrest.  The latter situation, requires a review of both law and fact and a determination as to what is and is not reasonable behavior.  By contrast, in a section 1983 action "the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury." Id. at 1007-08.  Yet, according to the Ninth Circuit, summary judgment in a section 1983 case is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest Plaintiff.  Id.

It is likely that a reasonable jury could find that the arresting officers had probable cause in the present case.  Despite the presence of an exception to the Fourth Amendment warrant requirement - a search incident to a lawful arrest - the facts leading up to Plaintiff's Breathalyzer test and arrest reasonably establish probable cause.  It is undisputed that Plaintiff consumed alcohol at a gathering she attended prior to the alleged battery.  It is also undisputed

15

that Plaintiff drove herself home.  After taking the statements of Plaintiff and Tyrique who recalled smelling "beer on [Plaintiff's] breath," the responding officers conducted the Breathalyzer test, the results of which were 0.188.  Thus, probable cause existed to Breathalyze Plaintiff by virtue of her admission to drinking and driving herself home, combined with the inference that alcohol could have been a factor in the ensuing dispute between Plaintiff and her son.

As articulated above, the officers in the present case had probable cause to Breathalyze and arrest Plaintiff.  Accordingly, the Court **GRANTS** Defendants City of North Las Vegas summary judgment on Plaintiff's Civil Rights claims pertaining to the Breathalyzer test and subsequent arrest.

**4. Civil Conspiracy**

Plaintiff alleges that the City of North Las Vegas and Terry Graham, participated in a civil conspiracy to Breathalyze and arrest her.  To prove a claim of civil conspiracy, a plaintiff has the burden of proving (1) that two or more persons or entities, who by some concerted action, intended to accomplish an unlawful objective for the purpose of harming plaintiff; and (2) that Plaintiff suffered damages as a result of this act.  Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251 (Nev. 1998).  An alleged conspiracy is not actionable unless it results in the perpetration of an unlawful act, or some injurious act by lawful means. Eikelberger v. Tolotti, 611 P.2d 1086, 1088 (Nev. 1980).

Nevada courts have incorporated Eikelberger stating that conspiracy is not an independent cause of action in and of itself, but must be premised on an intentional tort.

<u>Rivercard, LLC v. Post Oak Prods., Inc.</u>, No. 2:12-CV-1150-JCM-CWH, 2013 WL 1908315, at *4 (D. Nev. May 6, 2013).  In <u>Rivercard</u>, the plaintiff brought a cause of action for fraudulent misrepresentation.  The court, after granting the Motion to Dismiss the fraud claims, ruled that, because the underlying tort claims failed, so too did the plaintiff's claim for civil conspiracy, thus disposing of the conspiracy cause of action.  <u>See also</u> <u>Shoemaker v. Northrop Grumman Corp.</u>, 2011 U.S. Dist. LEXIS 139576 (2011) ("Shoemaker has not shown an underlying tort or other legal wrong … thus, there is no underlying tort or wrong on which Shoemaker's civil conspiracy claim could possibly lie.").  In this case, Plaintiff's search and arrest were constitutional and she has not asserted a cause of action of civil conspiracy in conjunction with an intentional tort.

Additionally, Plaintiff alleges that the strip search conducted by officers at the City Detention Center "did not occur as part of a regular intake procedure and was done near the end of her 11-hour detention for the sole purpose of harassing and humiliating Plaintiff."  Yet, as established above, the strip search was conducted pursuant to a blanket Detention Center policy that all inmates placed in isolation are to be strip searched.  Accordingly, the Court **GRANTS** Defendants City of North Las Vegas and City of Las Vegas summary judgment on Plaintiff's civil conspiracy claim.

### 5. Assault and Battery

Battery means any willful and unlawful use of force or violence upon the person of another.  NRS 200.400.  Assault is defined as an "unlawful attempt, coupled with a present

ability, to commit a violent injury on the person of another." NRS 200.471.  Plaintiff alleges that both the City of North Las Vegas - specifically the arresting officers - and the City of Las Vegas, are liable for assault and battery regarding the Breathalyzer test, the arrest, and the subsequent strip search.

A municipality cannot be held liable under section 1983 on a Respondeat Superior theory.  See Monnell at 690.  Although a municipality is a person for purposes of liability pursuant to a section 1983 action, liability is predicated upon the execution of a municipality's policy or custom, which "causes an employee to violate another's constitutional rights." Id. at 694.  Further, a plaintiff need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint. Shaw, at 610 (9th Cir. 1986).

As established above, the Court finds that Breathalyzer test and subsequent arrest were lawful.  Additionally, there is no indication in the record that the City of North Las Vegas obviated an established policy or custom while conducting the Breathalyzer test and subsequent arrest.  Further, there has been no evidence submitted on the record of a policy or custom to which the responding officers adhered in order to cause Plaintiff's alleged injury.  The Court accordingly **GRANTS** Defendants City of North Las Vegas summary judgment regarding Plaintiff's assault and battery claim.

Plaintiff correctly notes in her Opposition to the City of Las Vegas' Motion for Summary Judgment that the motion fails to provide an argument addressing her claims for assault and battery.  Further, as established above, the City of Las Vegas implemented an

unconstitutional strip search policy, forming the basis of Plaintiff's 42 U.S.C. §1983 claim.  As a result the Court **DENIES** Defendants City of Las Vegas summary judgment on Plaintiff's assault and battery claims.

### 6. False Arrest and False Imprisonment

In order to establish a claim for false imprisonment, a plaintiff must show that she was restrained of her liberty under the probable imminence of force without any legal cause or justification.  Hernandez v. City of Reno, 634 P.2d 668 (Nev. 1981).  In order to prove false arrest, in a false imprisonment action, a plaintiff must show that the defendant instigated or effected an unlawful arrest.  Nau v. Sellman, 757 P.2d 358 (1988). An unlawful arrest, as established above, is one that runs afoul of the Fourth Amendment absent established exceptions.  Probable cause existed for Plaintiff's arrest and as a result, she was lawfully detained.  Accordingly, the Court **GRANTS** both Defendants, City of North Las Vegas and City of Las Vegas, summary judgment regarding Plaintiff's false arrest and false imprisonment claims.

### 7. Defamation

An action for defamation requires the plaintiff to prove four elements: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc., 213 P.3d 496, 503 (Nev. 2009).

There is no evidence in the record to support a defamation allegation.  Additionally, Plaintiff failed to provide an argument regarding defamation in her opposition to both the City

of North Las Vegas and the City of Las Vegas' motions for summary judgment.  The Court, accordingly, **GRANTS** Defendants summary judgment regarding Plaintiff's defamation claim.

### 8. Negligent Hiring, Training, and Supervision

The elements for negligent hiring, training and supervision include: (1) a general duty of the employer to use reasonable care in the training, supervision, and retention of employees to ensure they are fit for their positions, (2) breach of that duty, (3) injury, and (4) causation.  Hall v. SSF, Inc., 930 P.2d 94 (Nev. 1996).

Plaintiff alleges that the responding officers' immediate supervisor, Sergeant Semper, participated in and approved of the arrest of Plaintiff and ordered the use of the Breathalyzer test. As established above, both the Breathalyzer test and the arrest did not offend Plaintiff's Fourth Amendment rights, nor has Plaintiff provided any evidence to support a finding of negligence on the part of the City of North Las Vegas.  Accordingly, the Court **GRANTS** Defendant City of North Las Vegas summary judgment regarding negligent hiring, training, and supervision.

The City of Las Vegas failed to provide an argument regarding Plaintiff's negligence claim in their Motion for Summary Judgment, despite listing it as a cause of action against the Detention Center.  Accordingly, the Court **DENIES** Defendant City of Las Vegas summary judgment regarding Plaintiff's negligence claim.

### 9. Terry Graham

Plaintiff alleges that Defendant Terry Graham, her ex-husband and a North Las Vegas Police Officer, was the impetus for the administration of the Breathalyzer test, subsequent arrest, and strip search of Plaintiff.  She alleges civil conspiracy and civil rights claims against

20

Mr. Graham, yet he was not present during any other aforementioned events and his connection to the events leading up to this case appears to be cursory, at best.  Plaintiff alleges that Mr. Graham telephonically influenced the decision-making of the responding officers and the Detention Center officials who conducted the strip search.  These allegations are entirely unsupported by the record.

Plaintiff's strip search was conducted pursuant to a blanket policy to strip search all inmates placed in isolation.  Plaintiff was placed in isolation by virtue of her status as a corrections officer.  Further, probable cause existed to Breathalyze and arrest Plaintiff. The Court finds no genuine issues of material fact as to Mr. Graham's involvement in Plaintiff's case.  Accordingly, the Court **GRANTS** Defendant Terry Graham summary judgment on Plaintiff's claims against him.

### 10. Punitive Damages

Punitive damages serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating that wrong.  Dang v. Cross, 422 F.3d 800, 810 (9th Cir. 2005).  A jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others Dang, at 807.  Further, oppressive acts also support an award for punitive damages.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another.  Id. at 809. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  Id.  An act or omission is oppressive, however, if

done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.  Id.

In Nevada, punitive damages are awarded only where it is proven by "clear and convincing evidence" that the defendant has been guilty of oppression, fraud or malice, express or implied.  NRS 42.005.

There is no evidence to support a finding that the City of North Las Vegas acted with evil motive or intent, or that their actions involved a reckless or callous indifference to Plaintiff. Both the Breathalyzer test and arrest were supported by probable cause.  Further, there is no evidence to support the allegation that the strip search of Plaintiff was conducted with mal intent, a reckless disregard for Plaintiff's rights, or for the purposes of oppression.  To the contrary, the strip search was conducted pursuant to a blanket Detention Center policy.

The Court, accordingly, **GRANTS** Defendants City of North Las Vegas and City of Las Vegas summary judgment on Plaintiff's Punitive damages claim.

///

///

22

**<u>Conclusion</u>**

Accordingly, IT IS HEREBY ORDERED that the City of North Las Vegas' Motion for Summary Judgment (#35) is **GRANTED**; IT IS FURTHER ORDERED that the City of Las Vegas' Motion for Summary Judgment (#37) is **GRANTED in part** and **DENIED in part**; IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (#36) is **GRANTED**.

DATED this ____20th____ day of November 2015.

_____
Kent J. Dawson
United States District Judge